IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A PURPLE ZTE SMARTPHONE, AS MORE FULLY DESCRIBED IN ATTACHMENT A | Case No. 21-MJ-718 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, James Webb, being duly sworn, depose and state under oath as follows:

**Introduction and Background**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with Federal Bureau of Investigation ("FBI").  I have been employed as an FBI Special Agent for more than five years.  Since November 2015, I have been assigned to the South Jersey Resident Agency of the FBI.  I have investigated criminal violations related to economic crimes, child exploitation, and violent crimes.  In my capacity as a Special Agent, I have received training and gained experience in search, seizure, and arrest procedures; and in investigating money laundering, internet crimes against children, fraud, and various other crimes. I have participated in, and conducted, many criminal investigations involving violations of the laws of the United States, including but not limited to laws relating to fraud, money laundering, and computer-related offenses.  I worked as a police officer for approximately one year prior to joining the FBI. I have not included every detail or every aspect of my training, education, and experience but have highlighted those areas most relevant to this application.

3.      The information contained in this Affidavit is based upon my personal knowledge, as well as information obtained from other sources, including: (a) other law enforcement agents; (b)

statements made or reported by various witnesses with knowledge of relevant facts; (c) my review

of publicly available information; and (d) a review of documents and records obtained from various

sources.  Because this affidavit is being submitted for the limited purpose of establishing probable

cause to secure the requested warrant, it does not include every fact that I have learned during the

course of the investigation.  Where the content of documents and the actions, statements, and

conversations of individuals are recounted herein, they are recounted in substance and in part,

except where otherwise specifically indicated.

**Identification of the Device to be Examined**

4.     The property to be searched is a purple ZTE smartphone with no apparent additional

exterior identifiers and a background display that is gray and purple, hereinafter the "Device."  The

Device is currently located in a Faraday box located inside the FBI Philadelphia Field Office, 600

Arch Street, Philadelphia, Pennsylvania.

5.     The applied-for warrant would authorize the forensic examination of the Device for

the purpose of identifying electronically stored data particularly described in Attachment B.

**Probable Cause**

6.     A lead from the National Center for Missing and Exploited Children ("NCMEC")

advised that Victim A was a missing female juvenile from Pennsylvania who was last seen in April

2020.  Investigators learned that Victim A's photograph was posted on Skipthegames.com

("Website 1") in an advertisement for sexually illicit activities.  Based on my training and

experience, I am aware that Website 1 often is used to advertise, solicit, and coordinate acts of

prostitution.

7.     On April 13, 2021, an undercover agent ("UC") located in Philadelphia,

Pennsylvania, contacted the phone number associated with the advertisement on Website 1 for

2

Victim A.  As explained below, investigators later determined that this phone number was linked to the Device.  The user of the Device indicated that the user, then posing as Victim A, was located at a motel ("Motel A") in or around Mount Laurel, New Jersey.  The user of the Device sent messages to the UC indicating rates of $300.00 for an hour, $200.00 for a half hour and $100.00 for a short stay.  Based on my training and experience, I am aware that these amounts are consistent with somebody quoting prices for commercial sex acts.  The UC agreed to travel to Motel A.  In response to a message from the UC that the UC was making a stop on the way to Motel A, the user of the Device messaged the UC: "Get condoms while your there I'll give u the money for them."

8.      On April 13, 2021 at approximately 2:55 p.m., the UC texted the Device: "I'm here."  A short time later, the UC received a response: "You here."  The Device user instructed the UC to park near a restaurant adjacent to Motel A.  After parking, the UC received a text message: "Get out so I can see your not a cop."  The UC exited his vehicle and received another text: "Are you a cop."  The UC responded: "No" and "Im actually a dr."  The UC received another message from the Device: "Can you prove it when you come in?"  The UC responded: "I have my hospital ID."  The Device replied: "Ok 237."  Records from Motel A indicate that room 237 was at that time rented to Semaj A. Gilmore ("GILMORE"), and had been rented to GILMORE for approximately 20 days.

9.      The UC approached room 237 of Motel A.  After the UC showed the hospital identification through the window of the room to Victim A, Victim A opened the door for the UC to enter the room.

10.     While inside of the room, Victim A asked the UC if he had a condom and they discussed various sexual activities.  The UC indicated he needed to return to his car for money.  When the UC opened the door, other uniformed officers entered room 237.  Victim A indicated to officers that she was with a male sitting in a burgundy car.

3

11.     Meanwhile, officers conducting surveillance of Motel A observed a male, later identified as GILMORE, exit a burgundy car and enter the driver's seat of a red Jaguar in the parking lot of Motel A.  GILMORE drove the red Jaguar away from Motel A at a high rate of speed.  Local law enforcement officers conducted a traffic stop of the red Jaguar.  As part of the traffic stop, officers recovered the Device from the center console of the red Jaguar driven by GILMORE.

12.     Investigators dialed the telephone number from the Website 1 advertisement with which the UC had been communicating, which caused the Device to ring.  A consent search of Victim A's cell phone also showed communications with the same phone number linked to the Device.

13.     At all times relevant, "Victim A" was an individual who had not attained the age of 18 years.  At all times relevant, GILMORE had a reasonable opportunity to observe Victim A, and knew, or recklessly disregarded the fact, that Victim A had not attained the age of 18 years.

14.     The Device is currently in the lawful possession of the FBI.  It came into the FBI's possession from the Mount Laurel Police Department after officers seized the Device during a consent search of GILMORE's car.  Therefore, while the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

15.     The Device is currently located in a Faraday box located inside the FBI Philadelphia Field Office, 600 Arch Street, Philadelphia, Pennsylvania.  A Faraday box is designed to prevent external signals from reaching and affecting the Device.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this

investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

**Electronic Storage and Forensic Analysis**

16.     Based on my knowledge, training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and a personal digital assistant.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

17.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

18.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20.  *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**Conclusion**

21.     I submit that this affidavit supports probable cause for a search warrant authorizing

the examination of the Device described in Attachment A to seek the items described in

Attachment B.

Respectfully submitted,

s/ James Webb
JAMES WEBB
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Subscribed and sworn to before me
on April 16, 2021 in accordance with
the requirements of Fed. R. Crim. P. 4.1:

s/ David R. Strawbridge
HONORABLE DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

7

## **ATTACHMENT A**

**Identification of the Device to be Examined**

The property to be searched is a purple ZTE smartphone with no apparent additional exterior identifiers and a background display that is gray and purple, hereinafter the "Device." The Device is currently located in a Faraday box located inside the FBI Philadelphia Field Office, 600 Arch Street, Philadelphia, Pennsylvania.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Sections 1591 and 1594 (Sex Trafficking of Children and by Force, Fraud, or Coercion, and Attempt) and involve Semaj Gilmore, including:

     a.  images and videos of individuals engaged in or advertising for prostitution or sexually explicit conduct, as well as emails, call/chat logs, and text messaging related to sexually explicit conduct and those seeking to engage in such conduct, as well as related identifying information of those individuals;

     b.  any and all Internet activity or online peer-to-peer activity related to prostitution, sexually explicit conduct, or sex trafficking, including information of association, use, subscription, access to, or membership in online chat groups or websites that facilitate prostitution or sex trafficking, including Skipthegames.com;

     c.  information recording Semaj Gilmore's schedule, travel, or location, including his presence at or near Motel 1 or other hotels; and

     d.  all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.